UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONDA AUSTIN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>FOODLINER, INC.,<br><br>    Defendant. | Case No.16-cv-07185-HSG<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 49 |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiffs Ronda Austin, Christopher Corduck, Ernest Dial, Billy Wayne Gibson, and Bobby G. Smith. Dkt. No. 49. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion.

**I.    BACKGROUND**

    **A.    Factual Allegations**

Plaintiffs are former employees of Defendant Foodliner, Inc. Dkt. No. 23 (First Amended Complaint, or "FAC") ¶¶ 12-17. Plaintiffs worked as truck drivers for Defendant, and seek to bring suit on behalf of a class of "[a]ll individuals whom FOODLINER employed as truck drivers in California at any time during the Class Period," *id.* ¶ 35, which commenced on November 3, 2012, *see id.* ¶ 12.

Plaintiffs allege that their primary duty is to haul materials from one location to another using Defendant's trucks. *Id.* ¶ 23. Defendant controls all logistical details, like drivers' schedules and what specific duties are to be performed, and pays drivers on a per-trip basis. *Id.* ¶¶ 24-25. Plaintiffs allege that they

    are not paid for all hours worked, in particular, for their rest periods;

> for non-productive time, including but not limited to, for dead mileage, dead running or dead-heading ("dead-heading") (when the truck driver operates without carrying any cargo or load); for work performed pre- and post-trip; for the time spent fueling their vehicles; for the time spent completing necessary paperwork; for standby time; and for time spent attending required safety meetings and trainings. Finally, Plaintiffs and other truck drivers are not paid separately for their missed meal and rest periods.

*Id.* ¶ 27. Further, Defendant allegedly failed to reimburse the putative class for certain eligible costs incurred while on the job, *id.* ¶ 30, and failed to provide accurate wage statements, *id.* ¶ 31.

### B. Procedural Posture

Plaintiffs originally filed suit in state court on November 3, 2016. Dkt. No. 1, Ex. A. Defendant filed a notice of removal on December 15, 2016. Dkt. No. 1. On October 20, 2017, Plaintiffs filed the FAC, Dkt. No. 23, which Defendant answered on November 13, 2017, Dkt. No. 29. On April 19, 2018, the parties notified the Court that they had reached a settlement agreement, *see* Dkt. No. 43, after which Plaintiffs filed this unopposed motion for preliminary approval of the class settlement, Dkt. No. 49 ("Mot.").

### C. Settlement Agreement

After conducting extensive discovery, the parties went to mediation on August 16, 2017. *See* Dkt. No. 49-1 (Declaration of Hunter Pyle, or "Pyle Decl.") ¶¶ 19-22. Although the case did not settle at that session, the mediator later made a proposal on April 4, 2018. *Id.* ¶ 22. The parties accepted a modified version of that proposal and reached a settlement. *Id.*; *see also* Dkt. No. 49-2 (Settlement Agreement or "SA"). The Settlement Agreement's key terms are as follows.

#### 1. Class Definition

The class is defined as "all individuals employed by Foodliner as truck drivers in California at any time during the class period," which "means November 3, 2012 continuing through and including the date of the Court's order regarding preliminary approval of the Settlement." SA ¶¶ 5-6. There is also a Private Attorneys General Act ("PAGA") subclass ("the PAGA Subclass"), "which shall consist of all Class Members who were employed at any time during the time period from October 31, 2015, through the date of Preliminary Approval of the Settlement." *Id.* ¶ 53(b).

### 2. Settlement Benefits

Defendant agrees to pay a gross settlement amount of $1.2 million, which "is inclusive of all payments to Class Members, the Class Counsel Fees and Costs Payment, the Class Representative Service Payment, the Settlement Administration Fees, withholdings for wage payments made to Class Members under this Settlement, and payment to the [California Labor & Workforce Development Agency] for its share of PAGA penalties." *Id.* ¶ 40. This amount does not include employer payroll taxes. *Id.* ¶ 15. The proceeds will be distributed as follows:

> Each Participating Class Member shall receive a proportionate share that is equal to (i) the number of workweeks he or she worked during the time period from November 3, 2012, through the date of Preliminary Approval of the Settlement, divided by (ii) the total number of workweeks worked by all Participating Class Members during the time period from November 3, 2012, through the date of Preliminary Approval of the Settlement.

*Id.* ¶ 53(a). Furthermore, one quarter of the proceeds allocated to PAGA penalties ($81,405) will be distributed to the PAGA subclass as follows:

> Each Participating Class Member who is a member of the PAGA Subclass will receive a proportionate share of money allocated to that subclass that is equal to (i) the number of workweeks he or she worked during the time period from October 31, 2015, through the date of Preliminary Approval of the Settlement, divided by (ii) the total number of workweeks worked by all Participating Class Members who are members of the PAGA Subclass during the time period from October 31, 2015, through the date of Preliminary Approval of the Settlement.

*Id.* ¶ 53(b). Class members "will not have to make a claim in order to receive a distribution." *Id.* ¶ 41. No portion of the settlement fund will revert to Defendant, and any unclaimed portion of the fund will ultimately be paid to Legal Aid at Work. *See id.* ¶¶ 41, 44.

### 3. Release

Upon final approval of the settlement, Plaintiffs agree to "forever release, discharge, and . . . hold harmless Foodliner" from "all claims that were plead in the Action, including the Operative Complaint, or that could have been plead based on the facts alleged in the Action." *Id.* ¶¶ 28, 73. "The Parties intend that the Settlement described in this Agreement will release and preclude any further claim, whether by lawsuit, administrative claim or action, arbitration, demand, or other action of any kind, by each and all of the Participating Class Members to obtain

3

a recovery based on, arising out of, and/or related to any and all of the Released Claims." *Id.* ¶ 74. Further, the parties intend that the Settlement Agreement act as a "general release precluding any further claim . . . or other action of any kind, by the Plaintiffs, to obtain a recovery based on any claim that could have been asserted against Foodliner as well as any other Released Party in connection with his or her employment with Foodliner through the date that this Settlement is signed by Plaintiffs." *See id.* ¶ 75.

### 4. Class Notice

Within 30 days of this Court's granting preliminary approval, Defendant will provide the settlement administrator with relevant data about the class members. *See id.* ¶ 59. Within 10 days of receipt, the settlement administrator will send the notice of proposed settlement by first-class mail. *Id.* ¶ 60; *see also* SA, Ex. A (proposed notice of proposed settlement, or "Notice"). The Notice includes the nature of the action, the terms of the proposed settlement, the recipient's estimated settlement payment, and information about the release of claims against Defendant. It also includes information on how to opt out from and object to the settlement, as well as the relevant deadlines.

### 5. Opt-Out Procedure

The parties propose that class members who wish to opt out be required to mail to the settlement administrator a request for exclusion, containing the member's "full name; all other names used during employment with Foodliner; date of birth; the last four digits of the social security number or the employee identification number; and the telephone number." *Id.* ¶ 62. The parties propose that such requests be "deemed timely only if postmarked on or before forty-five (45) calendar days following the date of initial mailing of the Notice by the Settlement Administrator." *Id.*

### 6. Incentive Award

Plaintiff Austin intends to apply for an incentive award of no more than $10,000. *Id.* ¶ 45. Plaintiffs Corduck, Dial, Gibson, and Smith intend to apply for incentive awards of no more than $7,500 each. *Id.* ¶ 46. Defendant agrees not to oppose any of those applications. *See id.* ¶¶ 45-46.

4

### 7. Attorney's Fees and Costs

Plaintiffs intends to file an application for attorney's fees not to exceed 33 percent of the gross settlement amount, *id.* ¶ 49, or $399,960, *see* Pyle Decl. ¶ 25(d). Plaintiffs further intends to seek costs and expenses "not to exceed reasonable actual costs incurred by Class Counsel." SA ¶ 49.

## II. PROVISIONAL CLASS CERTIFICATION

Provisional class certification is a prerequisite to preliminary approval of a class action settlement. Here, the Court finds that provisional class certification is appropriate.

### A. Legal Standard

Plaintiffs bear the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). Class certification is a two-step process. First, the plaintiffs must establish that each of the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Second, the plaintiffs must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, the plaintiffs seek to certify a class under Rule 23(b)(3), they must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### B. Analysis

To determine whether provisional certification is appropriate, the Court considers whether the requirements of Rule 23(a) and Rule 23(b)(3) have been met. As discussed in more detail below, the Court finds that they have.

#### 1. Rule 23(a)

##### a. Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." The Court finds that numerosity is satisfied here because joinder of the estimated 214 proposed class members would be impracticable. *See* Pyle Decl. ¶ 26; SA ¶ 77.

#### b. **Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A contention is sufficiently common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350 (citation omitted) (original emphasis). Even a single common question is sufficient to meet this requirement. *See id.* at 359.

Common questions of law and fact in this action include: whether Defendant paid putative class members "on a piece-rate basis"; whether Defendant paid putative class members for all of the time they worked; whether Defendant provided the appropriate rest and meal periods; whether Defendant provided accurate wage statements within the meaning of section 226 of the California Labor Code; whether Defendant "reimbursed Class Members for the work-related use of their personal cell phones"; whether Defendant paid proposed class members all wages owed at the time of their termination; and whether Defendant violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and PAGA. Mot. at 7; *see also* Pyle Decl. ¶ 27. Accordingly, the Court finds that the commonality requirement is met in this case.

#### c. **Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

6

Here, the claims raised by Plaintiffs and the putative class members are identical, and arise under the same provisions of the California Labor Code. *See Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 608 (C.D. Cal. 2005) ("Since the named Plaintiffs raise the same Labor Code violations as other putative class members, their claims are typical of the class."), *rev'd and vacated on other grounds*, 737 F.3d 538 (9th Cir. 2013) (en banc); *see also* Mot. at 9; Pyle Decl. ¶ 28. Moreover, Plaintiffs have not alleged any individual claims. *See* Mot. at 9; Pyle Decl. ¶ 28. This is sufficient to satisfy the typicality requirement.

### d. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." The Court must address two legal questions: (1) whether the named Plaintiffs and their counsel have any conflicts of interest with other putative class members, and (2) whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the proposed class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any actual conflicts of interest in this matter, and no evidence in the record suggests that either Plaintiffs or proposed class counsel have a conflict with other class members. *See* Mot. at 10. Further, Plaintiffs' counsel has been appointed class counsel in multiple class actions in state court. *See* Pyle Decl. ¶ 67. The Court finds that, to date, proposed class counsel and Plaintiffs have prosecuted this action vigorously on behalf of the putative class, and there is no reason to suspect they will not continue to do so. The adequacy of representation requirement is therefore satisfied.

### 2. Rule 23(b)(3)

To certify a class, Plaintiffs must also satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must

7

be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. The Court finds that both requirements are met in this case.

### a. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation and internal quotation marks omitted) (original brackets). This "inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (citation and internal quotation marks omitted).

Here, as explained above, there are common questions of fact and law among Plaintiffs and the putative class, and both groups raise the same claims. *See* Mot. at 8-9. Because of this, Plaintiffs "will be able to establish liability for these common issues on a classwide basis," applying "common standards of proof." *See* Mot. at 8. Accordingly, the Court finds that the "common, aggregation-enabling[] issues" raised by the claims at issue are "more prevalent or important" than those questions affecting only individual members of the proposed class, and for purposes of settlement, finds the predominance inquiry satisfied. *See Tyson Foods*, 136 S. Ct. at 1045.

### b. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

8

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.* Here, because common legal and factual questions predominate over individual ones, and taking into account the substantial size of the putative class, the Court finds that the judicial economy achieved through common adjudication renders a class action the superior method for deciding these claims.

Accordingly, the Court finds that provisional class certification for purposes of preliminary approval is appropriate.

### C. Class Representative and Class Counsel

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts should consider when making that decision include:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

In light of Plaintiffs' counsel's extensive experience with wage-and-hour class actions (and the subject matter more generally), *see* Pyle Decl. ¶¶ 6-10, 12-14, and his diligence in prosecuting this action to date, the Court appoints Hunter Pyle and Chad Saunders of Hunter Pyle Law as class counsel.

### III. PRELIMINARY SETTLEMENT APPROVAL

Having provisionally certified the class, the Court next turns to the question of preliminary approval of the settlement.

9

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotation marks omitted). In those situations, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### B. Analysis

The Court considers each factor set forth in *Tableware*, and finds that preliminary approval is appropriate.

#### 1. Settlement Process & Obvious Deficiencies

The first factor the Court considers is the means by which the parties settled the action. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL

1627973, at *8 (N.D. Cal. Apr. 29, 2011). Here, the parties "reached a non-collusive settlement after discovery and extended negotiations," ultimately accepting a "mediator's proposal." Pyle Decl. ¶ 34. As such, class counsel believes that the proposed settlement is fair, adequate, and reasonable. *See* Mot. at 13-19. The Court thus finds that this factor weighs in favor of preliminary approval.

Second, the Court finds no obvious deficiencies in the settlement agreement, which weighs in favor of preliminary approval.

### 2. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *Bluetooth Headset*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Tableware*, 484 F. Supp. 2d at 1079.

Although the Settlement Agreement authorizes Plaintiff Austin and the other named Plaintiffs to seek incentive awards of up to $10,000 and $7,500, respectively, for their roles as named plaintiffs in this lawsuit, *see* SA ¶¶ 45-46, the Court will ultimately determine whether they are entitled to such an award, as well as the reasonableness of the amounts requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). At the final fairness hearing, Plaintiffs will be required to provide sufficient evidence to allow the Court to "evaluate [a named plaintiff's] award[] individually, using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *See Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (internal quotation marks omitted) (original ellipses). The Court will consider that evidence and evaluate the reasonableness of any incentive

11

award request accordingly. Nevertheless, because incentive awards are not per se unreasonable, and because there are no other indications of preferential treatment at this juncture, the Court finds that this factor still weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary") (emphasis omitted).

### 3. Range of Possible Approval

Last, the Court considers whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080. This requires the Court to evaluate the strength of Plaintiffs' case.

Here, individual class members' recovery will be proportionate relative to the claims of other members. *See* SA ¶ 53. Plaintiffs predicted the class's "realistic total recovery" to be $1,117,935.53. Pyle Decl. ¶ 55; *see also id.* ¶¶ 35-54 (describing rationale for calculation). The parties subsequently agreed on a gross settlement amount of $1.2 million, which "exceeds Plaintiffs' reasonably forecasted recovery by a little more than 7.5%." *Id.* ¶ 55. The gross settlement amount constitutes approximately 22 percent of Plaintiffs' maximum possible recovery at trial, which Plaintiffs calculated to be $5,553,480.42. *See* Pyle Decl. ¶¶ 36, 40, 44, 46, 50, 52. Given the substantial litigation risks enumerated by Plaintiffs, the Court finds that this amount weighs in favor of granting preliminary approval. For example, Plaintiffs acknowledge that their claim that Defendant failed to provide appropriate meal and rest periods "carried significant risks of both non-certification and reduction on the merits," *id.* ¶ 41, and that there "was significant risk of non-recovery" on their waiting time penalties claim "given Defendant's good-faith defenses to Plaintiffs' underlying claims," *id.* ¶ 47; *see also id.* ¶¶ 37 (highlighting risks to Plaintiffs' claim that Defendant failed to pay wages for all hours worked), 45 (reimbursement claim), 51 (wage statements claim), 53 (PAGA claims).

Accordingly, having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and grants preliminary approval.

### C. Proposed Class Notice

For Rule 23(b)(3) class actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

    (i)    the nature of the action;

    (ii)    the definition of the class certified;

    (iii)    the class claims, issues, or defenses;

    (iv)    that a class member may enter an appearance through an attorney if the member so desires;

    (v)    that the court will exclude from the class any member who requests exclusion;

    (vi)    the time and manner for requesting exclusion; and

    (vii)    the binding effect of a class judgment on members[.]

*Id.*

The Court approves of the parties' proposed Notice, *see* SA, Ex. A, which satisfies all of the criteria set forth in Rule 23(c)(2)(B) and is accordingly the best practicable form of notice under the circumstances. Moreover, Plaintiffs' request that the Court appoint Simpluris, Inc. as the third-party settlement administrator is granted. *See* Mot. at 1.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement in accordance with the discussion above. The Court **DIRECTS** the parties to meet and confer, and to submit to the Court a proposed schedule for further proceedings as follows:

//

//

//

//

| Event | Date |
|---|---|
| Deadline to provide class contact information to Settlement Administrator | |
| Deadline for Settlement Administrator to mail notice to all putative class members | |
| Filing deadline for motion for (1) attorney's fees and costs and (2) class representative incentive payments | |
| Deadline for class members to opt out or object to settlement and/or application for attorney's fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties shall submit their proposal no later than August 25, 2018. When submitting their motion for final approval, the parties shall include both a joint proposed order and a joint proposed judgment.

**IT IS SO ORDERED.**

Dated: 8/17/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge