UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONDA AUSTIN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>FOODLINER, INC.,<br><br>    Defendant. | Case No. 16-cv-07185-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE INCENTIVE AWARDS**<br><br>Re: Dkt. Nos. 55, 56 |

Pending before the Court are Plaintiffs Ronda Austin, Christopher Corduck, Ernest Dial, Billy Wayne Gibson, and Bobby G. Smith's unopposed motions for (1) final approval of class action settlement, *see* Dkt. No. 56 ("FA Mot."); and (2) attorneys' fees, costs, and class representative incentive awards, *see* Dkt. No. 55 ("Fees Mot."). For the reasons stated below, the Court **GRANTS** the motion for final approval and **GRANTS IN PART** and **DENIES IN PART** the motion for attorneys' fees, costs, and class representative incentive awards.

## I. BACKGROUND

### A. Factual Allegations

Plaintiffs were formerly employed as truck drivers by Defendant Foodliner, Inc. *See* Dkt. No. 23 (First Amended Complaint, or "FAC") ¶¶ 12–17. They brought suit on behalf of a class of "[a]ll individuals whom FOODLINER employed as truck drivers in California at any time during the Class Period," *id.* ¶ 35, which commenced on November 3, 2012, *see id.* ¶ 12.

Plaintiffs alleged that their job was to haul materials from one location to another using Foodliner's trucks. *Id.* ¶ 23. Foodliner controlled all the logistical details, such as drivers' schedules, work locations, and the specific duties to be performed. *Id.* ¶ 24. It paid drivers on a

per-trip basis. *Id.* ¶ 25. Plaintiffs alleged that this system meant that they were

> not paid for all hours worked, in particular, for their rest periods; for non-productive time, including but not limited to, for dead mileage, dead running or dead-heading ("dead-heading") (when the truck driver operates without carrying any cargo or load); for work performed pre- and post-trip; for the time spent fueling their vehicles; for the time spent completing necessary paperwork; for standby time; and for time spent attending required safety meetings and trainings.

*Id.* ¶ 27. And they were "not paid separately for their missed meal and rest periods." *Id.* Further, Foodliner allegedly failed to reimburse the putative class members for certain eligible costs incurred while on the job, *id.* ¶ 30, and to provide accurate wage statements, *id.* ¶ 31.

### B. Procedural Posture

Plaintiffs originally filed suit in state court on November 3, 2016. Dkt. No. 1, Ex. A. Foodliner removed the case on December 15. Dkt. No. 1. On October 20, 2017, Plaintiffs filed the FAC, Dkt. No. 23, which Foodliner answered on November 13, 2017, Dkt. No. 29.

On April 19, 2018, the parties notified the Court that they had reached a settlement agreement, *see* Dkt. No. 43, after which Plaintiffs filed an unopposed motion for preliminary approval of the class settlement, Dkt. No. 49. The Court granted preliminary approval on August 17. *See* Dkt. No. 51.

Plaintiffs filed their motion for attorneys' fees, costs, and class representative incentive awards on November 6, *see* Fees Mot., and their motion for final approval on December 20, *see* FA Mot. The Court held a hearing on the motions on May 2, 2019. *See* Dkt. No. 60 (minute entry).

### C. Settlement Agreement

After conducting discovery, the parties engaged in a mediation on August 16, 2017. *See* Dkt. No. 49-1 (Declaration of Hunter Pyle, or "Pyle Decl.") ¶¶ 19–22. Although the case did not settle at the August session, the mediator made a proposal the following April. *Id.* ¶ 22. The parties accepted a modified version of the mediator's proposal and reached this settlement. *Id.*; *see also* Dkt. No. 49-2 (Settlement Agreement or "SA"). The Settlement Agreement's key terms are as follows:

### i. Class Definition

The class is defined as "all individuals employed by Foodliner as truck drivers in California at any time" from November 3, 2012 to August 17, 2018. SA ¶¶ 5–6. There is also a Private Attorneys General Act ("PAGA") subclass ("the PAGA Subclass"), consisting of class members employed by Foodliner between October 31, 2015 to August 17, 2018. *Id.* ¶ 53(b).

### ii. Settlement Benefits

Foodliner agreed to pay a gross settlement amount of $1.2 million, which "is inclusive of all payments to Class Members, the Class Counsel Fees and Costs Payment, the Class Representative Service Payment, the Settlement Administration Fees, withholdings for wage payments made to Class Members under this Settlement, and payment to the [California Labor & Workforce Development Agency] for its share of PAGA penalties." *Id.* ¶ 40. This amount does not include employer payroll taxes. *Id.* ¶ 15. The proceeds will be distributed as follows:

> Each Participating Class Member shall receive a proportionate share that is equal to (i) the number of workweeks he or she worked during the time period from November 3, 2012, through the date of Preliminary Approval of the Settlement, divided by (ii) the total number of workweeks worked by all Participating Class Members during the time period from November 3, 2012, through the date of Preliminary Approval of the Settlement.

*Id.* ¶ 53(a). Further, one-quarter of the $81,405 allocated to PAGA penalties (i.e., $20,351.25) will be distributed to the PAGA subclass as follows:

> Each Participating Class Member who is a member of the PAGA Subclass will receive a proportionate share of money allocated to that subclass that is equal to (i) the number of workweeks he or she worked during the time period from October 31, 2015, through the date of Preliminary Approval of the Settlement, divided by (ii) the total number of workweeks worked by all Participating Class Members who are members of the PAGA Subclass during the time period from October 31, 2015, through the date of Preliminary Approval of the Settlement.

*Id.* ¶ 53(b). Class members "will not have to make a claim in order to receive a distribution." *Id.* ¶ 41. No portion of the settlement fund will revert to Foodliner and any unclaimed portion of the fund will ultimately be paid to Legal Aid at Work. *See id.* ¶¶ 41, 44.

The settlement administrator estimates that that the net settlement fund will total $751,873.63. *See* Declaration of Lindsay Kline ("Kline Decl."), Dkt. No. 56-2 ¶ 15. The 217

class members will receive an average payment of $3,558.64; the largest individual payment is estimated to be $15,653.44 and the smallest individual payment is estimated to be $7.09. *See id.*

### iii. Release

Upon final approval of the settlement, Plaintiffs agree to "forever release, discharge, and . . . hold harmless Foodliner" from "all claims that were plead in the Action, including the Operative Complaint, or that could have been plead based on the facts alleged in the Action." *Id.* ¶¶ 28, 73. "The Parties intend that the Settlement described in this Agreement will release and preclude any further claim, whether by lawsuit, administrative claim or action, arbitration, demand, or other action of any kind, by each and all of the Participating Class Members to obtain a recovery based on, arising out of, and/or related to any and all of the Released Claims." *Id.* ¶ 74. Further, the parties intend that the Settlement Agreement act as a "general release precluding any further claim . . . or other action of any kind, by the Plaintiffs, to obtain a recovery based on any claim that could have been asserted against Foodliner as well as any other Released Party in connection with his or her employment with Foodliner through the date that this Settlement is signed by Plaintiffs." *See id.* ¶ 75.

### iv. Class Notice

The settlement administrator mailed the class notice to 216 class members. *See* Kline Decl. ¶ 8. The class notice explained the nature of the action, the terms of the proposed settlement, the recipient's estimated settlement payment, information about the release of claims against Foodliner, information on how to opt out from and object to the settlement, and the relevant deadlines. *Id.* Of the 216 class notices sent, two were deemed undeliverable. *Id.* ¶ 9. The settlement administrator also received two requests from class members to be added to the class list. *Id.* ¶ 10.

### v. Opt-Out Procedure

Any putative class member wishing to opt out was required to mail a request for exclusion within 45 days of when the settlement administrator initially mailed the class notice. SA ¶ 62. One putative class member opted out. Kline Decl. ¶ 11.

### vi. Incentive Awards

Plaintiff Austin requested a $10,000 incentive award. *See* Fees Mot. at 16. Plaintiffs Corduck, Dial, Gibson, and Smith requested incentive awards of $7,500 each. *Id.* at 16–17. Defendant agreed not to oppose any of these applications. *See* SA ¶¶ 45–46.

### vii. Attorneys' Fees and Costs

Plaintiffs agreed to seek attorney's fees amounting to 33% or less of the gross settlement amount, *id.* ¶ 49, or $399,960, *see* Pyle Decl. ¶ 25(d). Counsel filed an application for $300,000 in attorneys' fees, which is 25% of the gross settlement amount. Fees Mot. at 1. Class counsel also seek costs and expenses of $22,221.37. *Id.*

## II. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rules of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019, 1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on August 17, 2018, the Court incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No. 51 at 5–9. The Court affirms its previous findings and certifies the settlement class.

### B. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Hanlon*, 150 F.3d at 1025. To assess whether a proposed settlement comports with Rule 23(e), courts should consider the following factors:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1025 (the "*Hanlon* factors"). No single factor is the "most significant," *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982), and "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge," *Hanlon*, 150 F.3d at 1026. In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. The Court begins with the adequacy of notice before turning to whether the settlement itself is fair, reasonable, and adequate.

### i. Adequacy of Class Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receives notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice plan previously approved by the Court was properly implemented and complied with Rule 23(c)(2)(B). The settlement administrator mailed the class notice to 216 putative class members. *See* FA Mot. at 12; Kline Decl. ¶ 8. Eight of those notices were returned as undelivered; six were mailed to an updated address. *See* Kline Decl. ¶ 8. The administrator also established a toll-free phone number for putative class members with questions about the settlement. *See id.* ¶ 4. Two people contacted the administrator to request to be added to the class list. *Id.* ¶ 10. The administrator ultimately received one opt-out request and no objections to the settlement. *See id.* ¶¶ 11–12. In light of these facts, the Court finds that the parties have provided the best practicable notice.

### ii. Fairness, Adequacy, and Reasonableness of Settlement

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

### a. Strength of Plaintiffs' Case; Risk, Expense, Complexity, and Likely Duration of Continued Litigation; and Risks of Maintaining Class Action Status

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties . . . arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (noting that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotation omitted).

The parties settled this case before the Court had an opportunity to consider the merits of Plaintiffs' claims. But continuing to litigate this case would have posed substantial risks for Plaintiffs, as well as generated additional costs (which would ultimately reduce any recovery). The parties would have continued to engage in discovery and Plaintiffs likely would have moved for class certification and summary judgment. Each of these procedural hurdles would have been risky and costly. Accordingly, the Court finds that these factors support approving the settlement.

### b. Settlement Amount

The settlement amount also weighs in favor of approval. Class counsel estimates that Foodliner's maximum potential exposure for Plaintiffs' claims is roughly $5.5 million. *See* Pyle Decl. ¶ 41. The $1.2 million settlement thus represents an approximately 22% recovery for class members. *See* FA Mot. at 9. After fees and costs, class counsel estimates that the average class member will take home over $3,500—a significant recovery for class members. And any

7

unclaimed portion of the settlement fund will not revert to Foodliner but will be paid to Legal Aid at Work as a cy pres recipient. *See* SA ¶¶ 41, 44.[1] Considering these facts, the Court finds that the settlement amount favors approval.

### c. Extent of Discovery Completed and Stage of Proceedings

This factor evaluates whether class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The parties have engaged in a significant amount of informal exchange of information as well as formal discovery. *See* Mot. at 10. The discovery process also included Plaintiffs' successful motion to compel additional information about the class members. *See id.*; *see also* Dkt. No. 39. This factor weighs in favor of approval.

### d. Experience and Views of Counsel

The Court next considers the experience and views of counsel, and it finds that this factor also weighs in favor of approval. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotation omitted). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Counsel opines that the

---

[1] The Ninth Circuit has noted that the cy pres doctrine may be employed in the context of a class action settlement to "put the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) (quotation omitted). However, a cy pres distribution also "poses many nascent dangers" because the choice of a cy pres beneficiary "may answer to the whims and self interests of the parties, their counsel, or the court" if selection "is not tethered to the nature of the lawsuit and the interests of the silent class members." *Id.* at 1039. In light of these concerns, the Ninth Circuit requires that there be a "driving nexus between the plaintiff class and the cy pres beneficiaries"—in other words, the award must be guided by the objectives of the underlying statutes and the interests of the silent class, and must not benefit a group too remote from the class. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (internal quotation omitted). The Settlement Agreement explains that Legal Aid at Work was chosen because it is "a nonprofit organization that furthers the objectives and purposes underlying this case" in that it "provides civil legal services to the indigent." *See* SA ¶ 44. The Court finds that Legal Aid at Work meets the *Dennis* requirements because it shares the objective of the California Labor Code in ensuring employee rights and pay and any distribution will benefit people making claims similar to those of the Plaintiffs in this case. *See Cifuentes v. CEVA Logistics U.S., Inc.*, No. 16-CV-01957-H-DHB, 2017 WL 2537247, at *5 (S.D. Cal. June 12, 2017) (approving Legal Aid at Work as cy pres recipient in wage and hour class action settlement).

settlement "is in the best interest" of the class, especially when considering the "risk of significant delay, the risk that Foodliner will prevail on its defenses, and potential appellate issues." *See* Mot. at 11. The Court recognizes that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.") *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). And the Court has previously recognized that class counsel have considerable experience with wage-and-hour class action cases. *See* Dkt. No. 51 at 9. Though this factor's impact is modest, it favors approval.

### e. Reaction of Class Members

The reaction of class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice advising each class member of the requirements regarding opt-outs and objections was served in accordance with the methods approved by the Court. No class member objected either to the settlement administrator or at the final fairness hearing. Only one putative class member opted out of the settlement—and two people who were not initially notified of the settlement requested to join. The Court finds that the almost unanimously positive reception of the settlement by class members favors approval. *Cf. Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected).

\*    \*    \*

After considering and weighing all of the above factors, the Court finds that the Settlement Agreement is fair, reasonable, and adequate, and that the settlement class members received adequate notice. Accordingly, Plaintiffs' motion for final approval of class action settlement is **GRANTED**.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE INCENTIVE AWARDS

In its second unopposed motion, class counsel asks the Court to approve attorneys' fees of $300,000, Fees Mot. at 1, costs and expenses of $22,221.37, *id.*, and a $10,000 incentive award for Plaintiff Austin and $7,500 incentive awards for Plaintiffs Corduck, Dial, Gibson, and Smith, *id.* at 16–17.

### A. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In a state law claim—like this one—state law also governs the calculation of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under California law, the "percentage of fund method" is proper in class actions. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage fee." *Id.* The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). Trial courts "also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." *Laffitte*, 1 Cal. 5th at 506.

Under federal law, using the percentage-of-recovery method, 25% of the common fund is the benchmark for attorney fee awards. *See*, *e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").

Class counsel seek a benchmark award of 25% of the common fund, which amounts to $300,000. Fees Mot. at 6. *Cf. In re Bluetooth*, 654 F.3d at 942 (noting 25% as benchmark for fees). Class counsel represent that they incurred 427 hours of billable time, at rates ranging from $410 to $675 per hour. Fees Mot. at 13–14. According to counsel's calculations, their efforts in this case yield a lodestar of $217,575.50. *Id.* at 15. Counsel contend that the resulting 1.38

lodestar multiplier is reasonable considering the risk of non-payment, given that this case was litigated on a contingency basis. *See* Fees Mot. at 15.

The Court finds the fee request reasonable under both the percentage of fund and lodestar methods. First, the Court notes that class counsel are requesting less in fees than they were permitted to seek under the settlement agreement. Second, the 25% requested is the federal law benchmark and is thus presumptively reasonable. Third, the Court finds that the hours expended and rates charged on this matter were reasonable, and that the 1.38 multiplier is appropriate given the risk undertaken by class counsel in litigating this case on contingency. *See Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.") (internal quotation omitted). Therefore, the Court **GRANTS** the motion for attorneys' fees and awards $300,000 in fees to class counsel.

### B. Costs

Class counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation omitted). Class counsel seeks reimbursement of $22,221.37 in out-of-pocket costs. Counsel has provided an itemized list of expenses, including filing fees, travel expenses, mediation expenses, postage, and printing. *See* Pyle Decl. Ex. B. The Court has reviewed the enumerated costs and find them to be reasonably incurred. Accordingly, the Court **GRANTS** the motion for costs in the amount of $22,221.37.

### C. Class Representative Incentive Awards

Class counsel requests a $10,000 incentive award for Plaintiff Austin and a $7,500 incentive award for each of Plaintiffs Corduck, Dial, Gibson, and Smith. Fees Mot. at 16–17.

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *see also Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and,

sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* at 1165 (quotation omitted). The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (quotation omitted).

Courts in this district recognize that a $5,000 incentive award is "presumptively reasonable." *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016); *see also Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012) (granting an award of $5,000 to plaintiff prosecuting a wage and hour class action); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (observing that "as a general matter, $5,000 is a reasonable amount").

The Court finds that an incentive award of $10,000 for Austin and $5,000 each for the other named Plaintiffs is reasonable. Given that the average class member will receive approximately $3,500 from this settlement, these awards constitute a low multiplier as compared to the average class member. This low multiplier stands in stark contrast to some consumer class actions, where the multiplier may be in the hundreds and thus runs the risk of undermining adequacy. *See, e.g.*, *Esomonu v. Omnicare, Inc.*, No. 15-CV-02003-HSG, 2019 WL 499750, at *8 (N.D. Cal. Feb. 8, 2019) (approving $5,000 award to named plaintiff where class members would each receive $17.31). Further, class counsel has justified the larger award for Austin. Counsel explained at the final fairness hearing that Austin was integral to the initiation and successful prosecution of this lawsuit and that she took on personal and professional risk by searching for an attorney and recruiting co-workers to join the lawsuit while still employed by Foodliner. The

Court also finds it noteworthy that Austin spent 80 hours working on this case (including attending the mediation) and felt the need to resign from Foodliner because she was the named Plaintiff. *See* Dkt. No. 55-2. However, counsel has not provided any particular reason why the other named Plaintiffs are deserving of an award greater than the presumptive one. Therefore, the Court awards $10,000 to Austin and $5,000 to the other named Plaintiffs.

## IV. CONCLUSION

For the foregoing reasons, the Court orders that:

1. Plaintiffs' motion for final approval of the $1.2 million class action settlement is **GRANTED**.

2. Plaintiffs' motion for attorneys' fees, costs, and class representative incentive awards is **GRANTED IN PART** and **DENIED IN PART**. The Court awards class counsel $300,000.00 in attorneys' fees and $22,221.37 in costs. In addition, the Court approves a payment of $4,500.00 to the settlement administrator. The Court awards incentive payments of $10,000.00 to Plaintiff Austin and $5,000.00 each to Plaintiffs Corduck, Dial, Gibson, and Smith.

The parties and settlement administrator are directed to implement this final order and the Settlement Agreement in accordance with the terms of the Settlement Agreement. The parties are directed to submit a joint proposed judgment by May 31, 2019.

**IT IS SO ORDERED.**

Dated: 5/10/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge